# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs April 27, 2016

## STATE OF TENNESSEE v. BILLY APPLEGATE

**Appeal from the Criminal Court for Sullivan County**
**No. S62442     James F. Goodwin, Jr., Judge**

---

**No. E2015-00809-CCA-R3-CD – Filed June 10, 2016**

---

The Defendant, Billy Applegate, was indicted for one count of driving under the influence (DUI); one count of DUI per se; one count of leaving the scene of an accident resulting in damage to property adjacent to a highway; one count of driving a motor vehicle with an expired registration; and two counts of resisting arrest. <u>See</u> Tenn. Code Ann. §§ 39-16-602, 55-4-104, -10-105, -10-401. Following a jury trial, the Defendant was acquitted of the DUI, DUI per se, and leaving the scene of an accident charges. The jury convicted the Defendant of driving with an expired registration and both resisting arrest charges. The trial court imposed a total effective sentence of six months' incarceration to be served at seventy-five percent. In this appeal as of right, the Defendant contends (1) that the evidence was insufficient to sustain his resisting arrest convictions; and (2) that the trial court erred in denying the Defendant's request for alternative sentencing.[1] Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., J., joined. JAMES CURWOOD WITT, JR., J., filed a separate concurring opinion.

Stephen M. Wallace, District Public Defender; and Ashley D. Boyer (at trial) and William Andrew Kennedy (at trial and on appeal), Assistant District Public Defenders, for the appellant, Billy Applegate.

---

[1] We have reservations about whether the Defendant's actions happened after the arrest was effectuated and whether the proper unit of prosecution was applied to the resisting arrest convictions. However, the Defendant raised neither of these issues in the trial court nor in his appellate brief to this court. Therefore, the Defendant has waived our consideration of these issues. <u>See</u> Tenn. R. App. P. 13(b) (stating that "[r]eview generally will extend only to those issues presented for review").

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Barry Staubus, District Attorney General; and Joseph W. McMurray and Benjamin Rowe, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

As pertinent to our review, Deputy Joey Hackler of the Sullivan County Sheriff's Office responded to a call of "a single vehicle crash" at approximately 10:30 p.m. on September 22, 2012. Deputy Hackler testified that when he arrived at the scene he found "a red Jeep truck down in the ditch" just off the road with "some tracks that [led] from the road into the grass [and] into the ditch." Deputy Hackler further described the vehicle as being "kind of angled" and said that it looked like "it couldn't get out." Deputy Hackler testified that the truck appeared to have knocked down a street sign.

Deputy Hackler testified that the vehicle was unoccupied. Deputy Hackler checked the truck's license plate "to find out who it belong[ed] to." The truck was registered to the Defendant, who lived just up the hill from where the truck was found. Deputy Hackler also noticed that the truck's registration was expired. Deputy Hackler entered the truck to perform "an inventory" before having it towed away. Deputy Hackler testified that upon entering the vehicle, he "could smell a strong odor of alcohol."

Having determined that the truck was registered to the Defendant, Deputy Hackler, Sergeant Joe Stewart, and a local constable went to the Defendant's home to investigate further. Deputy Hackler "heard something moving" in the brush of a nearby embankment while Sgt. Stewart was at the front door of the house speaking to the Defendant's wife. Deputy Hackler, Sgt. Stewart, and the constable walked over to the embankment and found the Defendant "kind of crouched down . . . in behind the weeds." Deputy Hackler identified himself and asked the Defendant to come out.

Deputy Hackler testified that the Defendant did not respond to his command to come out of the brush. Deputy Hackler and Sgt. Stewart "helped [the Defendant] out" by "grabb[ing] his arm" and "pull[ing] him up the hill." Deputy Hackler testified that the Defendant was not "in compliance as [they] were pulling him up the hill." Deputy Hackler described the Defendant as "kind of rough looking, kind of grungy" and said that he "could smell a strong odor of alcohol coming from his person." The Defendant denied hiding from the officers when they came to his house. The Defendant testified that he was "actually in [his] front yard puking."

Deputy Hackler asked the Defendant to submit to some field sobriety tests, and the Defendant "was very uncooperative and refused to do so." The Defendant was then arrested on suspicion of DUI. The Defendant was placed in Sgt. Stewart's patrol car to transport him to a local hospital for a blood draw. Deputy Hackler testified that as they drove away from the Defendant's house and down the hill, Sgt. Stewart stopped his patrol car. Deputy Hackler saw the Defendant "being uncooperative [and] trying to kick out the [patrol car's] window." The Defendant had been handcuffed with his hands behind his back, and as Deputy Hackler approached Sgt. Stewart's patrol car, he could see the Defendant "trying to get his hands in front of him."

Deputy Hackler testified that the Defendant was eventually able to get his hands in front of him. Deputy Hackler and Sgt. Stewart had to put the handcuffs back on the Defendant. Deputy Hackler testified that the Defendant began to "resist at that point" and that they "advised him to stop resisting [but] he continued." Deputy Hackler described the Defendant's resistance as "[p]ulling, tugging away from [them], yelling, screaming[,] . . . [and] [j]ust being disorderly and uncooperative." The Defendant submitted to the blood draw at the hospital and told Deputy Hackler and Sgt. Stewart that he had been drinking liquor instead of beer that night.

Based upon the foregoing, the jury convicted the Defendant of two counts of resisting arrest and one count of driving a vehicle with an expired registration. The trial court elected to hold a sentencing hearing on this matter. The Defendant's presentence report revealed that he had prior misdemeanor convictions for two assaults, attempt to commit custodial interference, simple possession, domestic violence, theft, possession of alcohol by a person under twenty-one years old, and numerous traffic offenses. The Defendant received his first conviction at the age of eighteen and was thirty-two at the time of the sentencing hearing.

The report showed that the Defendant had never had a probationary sentence revoked. However, there had been four separate violation warrants issued against the Defendant that were ultimately dismissed for various reasons. The majority of all of the Defendant's prior sentences had been served on probation. For all of the Defendant's prior convictions, he had only served forty-two days' incarceration. The Defendant requested that the trial court grant him alternative sentences for his convictions. The Defendant testified that he and his wife had recently separated and that he had custody of their four children, who ranged in age from two to eleven.

The trial court sentenced the Defendant to thirty days for the driving a vehicle with an expired registration conviction and six months for each of the resisting arrest convictions. The trial court ordered all three sentences to be served concurrently. The trial court also denied the Defendant's request for alternative sentencing and ordered the sentences to be served at seventy-five percent.

In denying alternative sentencing, the trial court placed great weight on the Defendant's record of prior misdemeanor convictions. The trial court stated that the Defendant "from the time he was [eighteen] until now [had] regularly committed misdemeanor offenses" and had been given probationary sentences. Put another way, the trial court found the fact that the Defendant had "been given a probated sentence after a probated sentence from the time that he was [eighteen] years old . . . [until he was] [thirty-two] years old" weighed against all of the other factors considered by the trial court. The Defendant now appeals to this court.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his convictions for resisting arrest. The Defendant argues that his actions did "not rise to the level of force necessary to sustain a conviction for resisting . . . arrest." The Defendant also argues that Deputy Hackler "never mention[ed] Sgt. Stewart by name when describing the actions" of the Defendant; therefore, the State failed to prove that the Defendant resisted Sgt. Stewart. The State responds that the evidence was sufficient to sustain the Defendant's convictions for resisting arrest.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence, rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Both "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

It is illegal for "a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer . . . from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer . . . ." Tenn. Code Ann. § 39-16-602(a). Here, Deputy Hackler testified that the Defendant attempted to kick the window out of Sgt. Stewart's patrol car and attempted "to get his hands in front of him." The Defendant was eventually successful in getting his hands in front of himself, causing Deputy Hackler and Sgt. Stewart to have to handcuff him again. Deputy Hackler testified that when they attempted to do this, the Defendant began "[p]ulling, tugging away from [them], yelling, screaming[,] . . . [and] [j]ust being disorderly and uncooperative."

This court has previously held that actions similar to the Defendant's amounted to sufficient force to support a conviction for resisting arrest. See State v. Jeremy D. Parvin, No. E2014-01569-CCA-R3-CD, 2015 WL 2128585, at *3 (Tenn. Crim. App. May 6, 2015) (the defendant "withdrew his wrist, made a fist, and then struggled to avoid having his hands cuffed"), perm. app. denied (Tenn. Aug. 13, 2015); State v. Jonathan Lamont Jones, No. W2011-02311-CCA-R3-CD, 2012 WL 4057263, at *3 (Tenn. Crim. App. Sept. 17, 2012) (the defendant pulled "his hands away from" the arresting officers and "continued to resist the officers when they attempted to handcuff him"); State v. Mary Margaret Boyd, No. M2004-00580-CCA-R3-CD, 2005 WL 885091, at *3 (Tenn. Crim. App. Apr. 15, 2005) (the defendant resisted officers by "'twisting, turning and pulling away'"). Accordingly, we conclude that the Defendant's actions rose to the level of force necessary to sustain a conviction for resisting arrest.

With respect to the Defendant's argument regarding his conviction for resisting Sgt. Stewart, the record belies his assertion that the State failed to prove that the Defendant resisted Sgt. Stewart. Deputy Hackler testified that he went to the Defendant's home with Sgt. Stewart and a local constable. However, Deputy Hackler also testified that the Defendant was placed in Sgt. Stewart's patrol car upon his arrest and that he was following behind Sgt. Stewart's patrol car when it stopped a short distance from the Defendant's house. Deputy Hackler further testified that he saw the Defendant attempt to

kick the window out of Sgt. Stewart's patrol car. Deputy Hackler approached Sgt. Stewart's patrol car and helped to re-handcuff the Defendant.

Deputy Hackler testified that "we" removed the Defendant from the patrol car and that the Defendant resisted by pulling away from "us." However, Deputy Hackler made no mention of the constable during this portion of his testimony, and it was a reasonable inference for the jury to conclude that Deputy Hackler was referring to himself and Sgt. Stewart. Accordingly, we conclude that the evidence was sufficient to sustain both of the Defendant's convictions for resisting arrest.

## II. Denial of Alternative Sentencing

The Defendant contends that the trial court erred in denying his request for alternative sentencing. The Defendant argues that the trial court erred in placing great weight on his record of prior misdemeanor convictions. While the Defendant admits to having "fourteen misdemeanor convictions," he argues that over half of them are for traffic offenses and that a significant portion of the convictions "are over [ten] years old." The Defendant further argues that the trial court did not place sufficient weight on his "social history," chiefly, the fact that he had recently separated from his wife and had custody of their four children. The State responds that the trial court did not abuse its discretion in denying the Defendant's request for alternative sentencing.

The standard of review for "questions related to probation or any other alternative sentence" is an abuse of discretion "accompanied by a presumption of reasonableness." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). This court has previously applied the same standard of review to misdemeanor sentencing cases. See State v. Christopher Dewayne Henson, No. M2013-01285-CCA-R3-CD, 2015 WL 3473468, at *5 (Tenn. Crim. App. June 2, 2015) (citing our supreme court's statement in State v. King, 432 S.W.3d 316, 324 (Tenn. 2014), that this standard applies to "all sentencing decisions"), perm. app. denied (Tenn. Sept. 17, 2015).

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. Tenn. Code Ann. § 40-35-302(b). A separate sentencing hearing is not required in misdemeanor sentencing, but the trial court must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." Tenn. Code Ann. § 40-35-302(a).

Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. See State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). Unlike the

felony sentencing statute, which requires the trial court to place its findings on the record, the misdemeanor sentencing statute merely requires the trial court to "consider the principles of sentencing and enhancement and mitigating factors."  Troutman, 979 S.W.2d at 274.  Defendants convicted of misdemeanors are not presumed eligible for alternative sentencing.  State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995).

A defendant seeking an alternative sentence bears the burden of showing that such a sentence will "'subserve the ends of justice and the best interest of both the public and the defendant.'"  State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956)), overruled on other grounds, State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000).  Among the factors applicable to alternative sentencing consideration are the circumstances of the offense, the defendant's criminal record, social history, and present condition, the deterrent effect upon the defendant, and the best interests of the defendant and the public.  State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

In addressing a defendant's suitability for alternative sentencing, the trial court should also consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offense; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C).  A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate.  Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).  Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed."  Tenn. Code Ann. § 40-35-103(2), (4).

Here, the trial court conducted a detailed and lengthy analysis which addressed the factors listed above prior to denying the Defendant's request for an alternative sentence. The trial court was troubled by the fact that the Defendant had a lengthy record of misdemeanor convictions and that measures less restrictive than confinement had frequently been applied to the Defendant, yet he continued to commit new offenses.

Contrary to the Defendant's argument, the trial court specifically stated that it considered the Defendant's "social history." With respect to the Defendant's argument regarding the age of his convictions, a trial court may consider the amount of time that has passed since a prior conviction, but it is not required to do so. State v. Charles Hamlin, No. M1999-01970-CCA-R3-CD, 2000 WL 1208314, at *2 (Tenn. Crim. App. Aug. 24, 2000). Based upon the record before us, we cannot conclude that the trial court abused its discretion in denying the Defendant's request for alternative sentencing.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE